## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **ERIKA POGORZELSKA**, | ) | |
| | ) | No. 19 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY DEMAND** |
| | ) | |
| **VANDERCOOK COLLEGE OF MUSIC** | ) | |
| and **ERIC BALLENGER**, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Erika Pogorzelska, through her attorneys, KULWIN, MASCIOPINTO & KULWIN, LLP, respectfully submits her complaint against defendant VanderCook College of Music and defendant Eric Ballenger.

### Nature of the Action

1.      Plaintiff Erika Pogorzelska (Plaintiff) brings this action under Title IX of the Education Amendments Act of 1972 to redress the unlawful discrimination, deliberate indifference and retaliation by defendant VanderCook College of Music (VanderCook) after she reported sexual assault committed by defendant Eric Ballenger (Ballenger), a VanderCook student, (collectively, "Defendants").

2.      In violation of Title IX, despite credible reports and evidence that Ballenger sexually assaulted Plaintiff, VanderCook failed to conduct a reasonable investigation; allowed Ballenger to attend school without adequate discipline or restriction; refused to enforce a no contact ordered entered against Ballenger; and left Plaintiff, a sophomore at

the time of the sexual assault, to protect herself from continued harassment and retaliation from VanderCook students and professors. Defendants effectively forced Plaintiff to leave VanderCook in order to escape the school's hostility and discriminatory educational environment.

3.    Plaintiff seeks to be made whole for the damages caused by VanderCook's deliberate indifference and retaliation in handling her sexual assault complaint and by Ballenger's assault and battery, including, but not limited to, compensation for her emotional distress, compensation for costs associated with having to transfer to a different university, proper remedial actions regarding her claims, and the reasonable attorney fees' and costs she incurred.  Plaintiff also seeks appropriate equitable relief to require VanderCook to take reports of sexual assault seriously and to educate its students, professors and staff about the protections afforded by Title IX.

## Jurisdiction and Venue

4.    Plaintiff brings this action pursuant to Title IX of the Education Amendments Act of 1972, Section 901(a), 20 U.S.C. § 1681 *et seq*.

5.    This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

6.    This Court has supplemental jurisdiction over Plaintiff's state law claims alleged herein pursuant to 28 U.S.C. § 1367 as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

7.      Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the relevant events occurred within the Northern District of Illinois.

## The Parties

8.      Plaintiff is a former VanderCook student. At the time she was sexually assaulted by Ballenger and suffered the discrimination and retaliation alleged herein, Plaintiff was in her sophomore year at VanderCook.

9.      Defendant VanderCook is an institution of higher education duly organized and existing under the laws of the State of Illinois. VanderCook is a recipient of federal funds within the meaning of 20 U.S.C. § 1681(a). VanderCook geographically lies within Cook County, Illinois, located on the campus of Illinois Institute of Technology (IIT). VanderCook's undergraduate class is comprised of approximately 100 students.

10.      Defendant Ballenger is a former VanderCook student. At the time he sexually assaulted and battered Plaintiff, Ballenger was in his sophomore year.

## Factual Allegations

11.      In 2016, during her first year at VanderCook, Plaintiff met Ballenger at freshman orientation. Ballenger, a male VanderCook student, majored in music education. Plaintiff also majored in music education.

12.      Due to VanderCook's small size and the fact that they were pursuing the same degree, Plaintiff and Ballenger were often in the same classes and college-sponsored activities.

13.     In September 2017, Plaintiff began her second year at VanderCook. Plaintiff resided with another female VanderCook student near campus.

14.     Ballenger, with three roommates, also resided in an apartment near campus.

15.     On or about August 25, 2017, as the school year was getting underway, Plaintiff attended a party thrown by VanderCook students at Ballenger's apartment.

16.     During the gathering, Ballenger sexually assaulted Plaintiff while she was unconscious, at times asleep, and intoxicated.

17.     On August 29, 2017, Plaintiff reported the sexual assault to the Chicago Police Department after being seen by a doctor at Rush Hospital.  Plaintiff was also referred to Rape Victim Advocates (RVA), an independent, not-for-profit organization that provides resources and support for survivors of sexual violence.

### *VanderCook's Response to Plaintiff's Report of Sexual Harassment*

18.     On August 30, 2017, after speaking with an RVA counselor, Plaintiff reported the sexual assault directly to VanderCook by contacting Dr. I-Hsuan Tsai (Dr. Tsai), VanderCook's Title IX representative.

19.     On the same day, Dr. Tsai sent an email notifying Stacey Dolan, VanderCook's Dean of Undergraduate Studies (Dean Dolan), that Plaintiff had come forward with a Title IX report.  Dr. Tsai later met with Dean Dolan and informed her that Plaintiff reported to Dr. Tsai that she was sexually assaulted at an off- campus party by Ballenger.

20.    Dean Dolan then emailed and met with Plaintiff. At the meeting, Plaintiff reported the details of the assault and provided the names of individuals who might have witnessed material events relating to the assault.

21.    Dean Dolan discussed "immediate accommodations" including imposing a "No Contact" order and possibly changing Plaintiff's class schedule to protect Plaintiff from having to interact with Ballenger.

22.    Dean Dolan explained, in response to Plaintiff's reporting, that an investigation with VanderCook's Standards Committee would take place. Dean Dolan also stated that the internal investigation would be comprised of a small committee to protect Plaintiff's privacy.

23.    The initial meeting was the only time that Dean Dolan asked Plaintiff about the incident in question.

24.    On the same day, August 30, 2017, Dean Dolan and Professor David Eccles (Professor Eccles) met with Ballenger.  Ballenger also provided a list of witnesses. During the meeting, Ballenger was instructed to have no contact with Plaintiff going forward.

25.    For just two days between August 30, 2017 and September 5, 2017, VanderCook purportedly investigated Plaintiff's sexual assault report including meeting with students who attended the party.  During this time period, however, Plaintiff continued to be forced to see and interact with Ballenger in classes and college-sponsored required activities.

5

26.     Specifically, on August 31, 2017, between 10:30 am and 1:00 pm, Dean Dolan and Professor Eccles met with seven students and asked them to "explain their perspective of any events that occurred at the party" on August 25, 2017.

27.     On September 5, 2017, Dean Nolan and Professor Eccles met to "review the evidence and discuss any new evidence that may have been presented." No official Title IX hearing was conducted.

28.     On September 6, 2017, Plaintiff went to Dean Dolan's office after meeting with an IIT counselor. Plaintiff was very upset and reported to Dean Dolan that she was being harmed by the fact that the No Contact order was not being enforced and she was being required to see and interact with Ballenger in classes and required college-sponsored activities. Plaintiff stated to Dean Dolan that she "just couldn't do this" anymore and that she has "tried, but everything on this campus reminds [her] of [Ballenger]" and that she "can't make music with that monster."

29.     In response, Dean Dolan stated it was difficult to do anything to protect Plaintiff from having to interact or be in the same classes as Ballenger because it was a "small school." Dean Dolan provided Plaintiff with three options: (1) continue at VanderCook with "some" accommodations made to Ballenger's schedule; (2) withdraw from all but her theory and sightseeing courses; or (3) withdraw completely. Dean Dolan also stated during the meeting that the results from the investigation would be shared with Plaintiff and Ballenger early the next week.

30.     On the following Monday, September 11, 2017, Plaintiff went to Dean Dolan's office and inquired again as to her options as well as the effect such options

would have on her financial aid and other financial grants. Also during the meeting, Plaintiff requested an Independent Study for her music history class so that she would not have to attend class with Ballenger.

31.     Dean Dolan stated that the school could not accommodate her request and indicated that Plaintiff needed to make a final decision with regard to the three options by Wednesday, September 13, 2017. Dean Dolan also made it clear that, if Plaintiff decided to leave school early, she would not receive any credit for the semester but would still be responsible for the semester's tuition.

32.     The following day, September 12, 2017, Dean Dolan and Professor Eccles met to finalize their investigation and decide on sanctions for Ballenger.

33.     At no time prior to the September 12, 2017 meeting did Professor Eccles meet with Plaintiff or interview her regarding the events in question.

34.     At no time prior to the September 12, 2017 meeting did Dean Dolan or Professor Eccles give Plaintiff the opportunity to learn of what evidence Ballenger had presented or to rebut any such evidence or information.

35.     At no time prior to the September 12, 2017 meeting did Dean Dolan or Professor Eccles convey to Plaintiff the information they had learned from their interviews of student witnesses or provide Plaintiff with the opportunity to rebut such evidence or information.

36.     At no time prior to the September 12, 2017 meeting was there any informal or formal hearing regarding Plaintiff's sexual assault allegations against Ballenger.

37. Apparently, at the September 12, 2017 meeting, both Dean Dolan and Professor Eccles had determined, for unknown and unstated reasons, that "there was not a preponderance of the evidence against [Ballenger]" but that some educational and disciplinary sanctions need to be placed on him. The sanctions supposedly included:

    a.  online or in-person training on sexual misconduct;

    b.  stepping back from leadership positions for the fall semester to allow Ballenger adequate time to complete the sexual misconduct training;

    c.  a mediated meeting between Plaintiff and Ballenger "to begin the healing process"; and

    d.  the report of the incident to remain in Ballenger's official file until his completion of his degree program.

### *The Aftermath*

38. Plaintiff was not consulted on the final investigative findings, the final sanctions imposed on Ballenger or provided with any written documentation outlining the results of VanderCook's supposed investigation. According to an email from Dean Dolan dated September 12, 2017, VanderCook was "not at liberty to discuss the sanctions placed on [Ballenger]."

39. As such, on September 12, 2017, Plaintiff contacted Life Span, an organization that provides counseling and advocacy for victims of sexual assault and domestic violence, to assist her with her options as VanderCook had failed to hold a Title IX hearing regarding her allegations and failed to provide her with a written report of its findings. After speaking with Plaintiff, Plaintiff's Life Span Advocate (Life Span Advocate) contacted VanderCook and scheduled a meeting with Dean Dolan.

8

40.     On September 14, 2017, Plaintiff's Life Span Advocate met with Dean Dolan and Plaintiff to go over the investigation and look into Plaintiff's options. Dean Dolan provided the Life Span Advocate with VanderCook's findings which found Ballenger "guilty but not guilty." Dean Dolan also provided the Life Span Advocate with the list of sanctions to be imposed on Ballenger. VanderCook's procedure did not provide for any "appeal" process.

41.     On September 15, 2017, after considering the options discussed again during the September 14, 2017 meeting, Plaintiff notified Dean Dolan via email of her intent to stay enrolled at VanderCook.

42.     Following Plaintiff's report of the sexual assault, VanderCook failed to take the matter seriously and favored the perpetrator by, among other ways, ignoring numerous requests to enforce the No Contact order. In fact, during a meeting with Plaintiff, Dean Dolan claimed the sexual assault was just "a misunderstanding" and noted that Ballenger "cried during the investigation process."

43.     Ballenger violated the No Contact order by, among other ways, signing up for a pep band extracurricular activity after Plaintiff had already signed up, by having his friends video-conference him to watch a friend's live recital performance despite being instructed not to attend the recital because Plaintiff would be present, and sitting directly in front of Plaintiff in class on multiple occasions.

44.     Plaintiff reported the violations of the No Contact order to Vandercook, in writing and orally, on numerous occasions. VanderCook, however, failed to take prompt and equitable responses to Plaintiff's complaints.

45.     For example, on or about October 2, 2017, Plaintiff met with Dean Dolan after having sent Dean Dolan an email in which Plaintiff reported that Ballenger was not adhering to the No Contact order that was supposedly in place. During the meeting, Dean Dolan became hostile towards Plaintiff and made statements to the effect of "Why are you blaming and attacking the school, it is not the school's fault that there were drugs and alcohol at the party [where Plaintiff was sexually assaulted]" and "there is nothing else the school can do for you." Dean Dolan also asked Plaintiff "why she was so angry" and recommended that "instead of being angry you should use that energy to focus and better yourself."

46.     Plaintiff was continually harassed and retaliated against by fellow students who were the perpetrator's friends. Plaintiff reported to Dean Dolan in writing several incidents of harassment and retaliation by students. VanderCook failed to adequately investigate Plaintiff's reports and failed to protect Plaintiff from further ongoing harassment and retaliation.

47.     By way of example, on October 12, 2017, it was brought to Dean Dolan's attention via email that friends of Ballenger were harassing Plaintiff by making inappropriate and aggressive comments. In response, Dean Dolan stated she would talk to the students. However, Dean Dolan failed to follow up with Plaintiff or otherwise take corrective action.

48.     Plaintiff's professors began to ignore her when they saw her around campus. They also reprimanded Plaintiff for being absent, despite being instructed to provide Plaintiff with certain accommodations in light of her situation.

49.     VanderCook also failed to timely provide Plaintiff with access to information regarding its purported investigation and findings despite repeated assurances made to Plaintiff's Life Span Advocate.

50.     On November 2, 2017, after avoiding Plaintiff's Life Span Advocate's phone calls for more than one month, Plaintiff and her Life Span Advocate were finally permitted to review VanderCook's final report in person.

51.     The final report stated that at the time of the sexual assault, Plaintiff was intoxicated and Ballenger was not intoxicated but it was determined that there was insufficient evidence to support Plaintiff's allegations or a lack of consent to sexual intercourse.

52.     This was contrary to VanderCook's written Harassment Policy which defines "Consent." The Harassment Policy provides, in relevant part, "that a person is unable to provide consent or give knowing consent if the person is: incapacitated due to alcohol or drugs or asleep."

53.     Plaintiff's Life Span Advocate had several conversations with Dean Dolan and VanderCook's President Dr. Rosanne Rosenthal (President), concerning the investigation, VanderCook's findings and Ballenger's violations of the No Contact order.

54.     During one conversation, the President referred to Plaintiff as "being paranoid" and stated that she "feel[s] bad for the perp because he comes into [her] office crying." Furthermore, in response to Plaintiff's concerns about the No Contact order not being enforced, the President stated "[I]t's a small school. It's not like I can kick him out."

11

55.     Plaintiff suffered tremendous mental anguish while still at the school and attended therapy to help her cope with the stress, anxiety and panic attacks she was suffering from arising out of these events.  Plaintiff suffered incapacitating circumstances consisting of depression, anxiety, stress, difficulty sleeping, panic attacks, flashbacks (of the sexual assault), difficulty focusing and PTSD.

56.     Plaintiff kept running into Ballenger on campus, in classes, in buildings and hallways and in other areas around campus.

57.     After knowing that Ballenger was not removed from the campus, Plaintiff felt extremely unsafe and experienced panic attacks and severe distress. These experiences prevented Plaintiff from being able to attend her scheduled classes and resulted in her falling behind in her classwork.

58.     Frustrated by VanderCook's inaction to and its refusal to take disciplinary action against Ballenger, on December 11, 2017, Plaintiff ultimately withdrew and transferred to a different college.  Plaintiff lost a $7,500 grant from VanderCook. Plaintiff is now required to attend school for an additional year because her credits from VanderCook did not transfer.  Plaintiff has also lost the opportunity to obtain grants (MAP, MTI) because they only apply to four years of college.

***VanderCook failed to adopt and implement essential Title IX and Sexual Harassment and Assault policies and procedure and failed to provide essential Title IX and Sexual Harassment and Assault training or instruction to administrators, staff and students.***

59.     In 1998, the U.S. Supreme Court stated, "[t]he number of reported cases involving sexual harassment of students in schools confirms that harassment

unfortunately is an all too common aspect of the educational experience." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998).

60.     In 1999, the U.S. Supreme Court determined that schools may be held liable in private Title IX actions for monetary damages when they are deliberately indifferent to student-against-student sexual misconduct and harassment. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). The Court stated deliberate indifference may be shown when a school makes no effort to investigate or put an end to student-against-student sexual harassment. *Id.* at 654.

61.     In January 2001, the U.S. Department of Education Office for Civil Rights ("OCR") issued Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties ("2001 OCR Guidance"), informing all U.S. schools receiving Federal financial assistance, including School Defendants, that "[p]reventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn." OCR reminded schools that student-against-student sexual misconduct constitutes prohibited sexual harassment.

62.     OCR also stated: "[S]chools need to ensure that employees are trained so that those with authority to address harassment know how to respond appropriately, and other responsible employees know that they are obligated to report harassment to appropriate school officials. Training for employees should include practical information about how to identify harassment and, as applicable, the person to whom it should be reported."

63.     The 2001 OCR Guidance stated, with respect to student-against-student sexual harassment: "If a student sexually harasses another student and the harassing conduct is sufficiently serious to deny or limit the student's ability to participate in or benefit from the program, and if the school knows … about the harassment, the school is responsible for taking immediate effective action to eliminate the hostile environment and prevent its recurrence.... [I]f, upon notice, the school fails to take prompt, effective action, the school's own inaction has permitted the student to be subjected to a hostile environment that denies or limits the student's ability to participate in or benefit from the school's program on the basis of sex."

64.     In January 2006, OCR issued Dear Colleague Letter - Sexual Harassment Issues, to U.S. public schools, including School Defendants, stating, "[u]nfortunately, a significant number of students are still subjected to sexual harassment, which can interfere with a student's education as well as his or her emotional and physical well-being." OCR reminded public schools of their obligation "to take immediate and effective steps to end sexual harassment when it occurs, prevent its recurrence, and remedy its effects."

65.     In September 2008, OCR issued Sexual Harassment: It's Not Academic, reiterating that unwelcome student-against-student sexual touching is sexual harassment, and that sexual harassment includes rape, sexual assault, dating violence, and sexually motivated stalking.

66.     On April 4, 2011, OCR sent Dear Colleague Letter: Sexual Violence ("2011 OCR Guidance"), to all U.S. public schools that issued a "call to action" to the

14

nation's schools because of "deeply troubling" data regarding school-place sexual violence. OCR informed schools, "[d]uring the 2007-2008 school year, there were 800 reported incidents of rape and attempted rape and 3,800 reported incidents of other sexual batteries at public high schools." The Guidance stated, "[a] number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, and sexual coercion. All such acts of sexual violence are forms of sexual harassment covered under Title IX."

67.     The 2011 OCR Guidance reminded schools they have an obligation to investigate reports of sexual harassment, must designate at least one employee to coordinate and comply with Title IX responsibilities, and recommended schools provide training and education to employees and students on sexual harassment and violence.

68.     On April 24, 2013, OCR sent Dear Colleague Letter: Retaliation, to all U.S. public schools, reminding them they may not retaliate against students or parents who complain to a school about a civil rights violation like sexual discrimination.

69.     On April 24, 2015, OCR sent Dear Colleague Letter: Title IX Coordinators, and issued a Title IX Resource Guide, to all U.S. public schools. OCR reminded schools of their obligation to designate at least one employee as a Title IX Coordinator who is responsible for coordinating the school's efforts to comply with and carry out the school's Title IX responsibilities, pursuant to 34 C.F.R. § 106.8(a). OCR stated, "In our enforcement work, OCR has found that some of the most egregious and harmful Title IX violations occur when a recipient fails to designate a Title IX coordinator or when a Title

IX coordinator has not been sufficiently trained or given the appropriate level of authority to oversee the recipient's compliance with Title IX."

70.     On August 21, 2015, the Illinois Preventing Sexual Violence in Higher Education Act, Public Act 099-0426, was signed into law. The new law imposed a number of requirements on higher education institutions, including VanderCook, related to their policies, procedures, provision of services and responses to sexual violence between students. The Act requires that VanderCook, among other things:

     a.  Incorporate particular timeframes into their procedures for notifying parties of key stages of the proceedings;

     b.  Provide survivors of sexual violence with a concise notification of the survivor's rights and options containing the particular requirements set forth in the Act;

     c.  Include an appeal process that contains particular grounds for appeal as set forth in the Act; and,

     d.  Provide specific sexual violence primary prevention and awareness programming, including annual training, for all students who attend one or more classes on campus as set forth in the Act, and provide each student with copies of its comprehensive policy, procedures, and related protocols.

*See* 110 ILCS 155.

71.     Based upon information and belief, despite clear notice by the U.S. Supreme Court, OCR and Illinois law, regarding VanderCook's obligations to prevent and remediate the effects of sexual harassment, at all times relevant hereto VanderCook failed to provide training or education to administrators, staff, students, regarding Title IX, student-against-student sexual harassment, or retaliation against students who report sexual harassment.

72.     Based upon information and belief, VanderCook, at all times relevant hereto, failed to provide training or education to administrators, staff, and students on protecting students from sexual harassment and violence, interviewing victims and potential witnesses of sexual harassment, investigating reports of sexual harassment, implementing a clear and concise appeal process, notifying victims of sexual assault of their rights and options, remediating sexual harassment and violence, proper reporting of suspected sexual harassment or violence to VanderCook's employees, and prohibition on retaliating against students who report sexual harassment.

73.     At all times relevant hereto, VanderCook's officially adopted sexual harassment and sexual assault policies were inequitable and inadequate with respect to investigating and properly responding to reports of student-against-student sexual harassment, and, in any event, based upon information and belief, VanderCook failed to provide training or education on those policies to administrators, staff, and students.

### COUNT I
### Deliberate Indifference in Violation of Title IX
### (*Defendant VanderCook*)

74.     For paragraph 74, Plaintiff incorporates paragraphs 1-73.

75.     VanderCook receives federal financial assistance for its education program. Therefore, VanderCook is subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681 (a), *et seq*.

76.     VanderCook owes a duty to Plaintiff to provide and ensure an educational environment free of sex discrimination and sexual harassment, and to enforce the

regulations, rules, and laws necessary to protect Plaintiff from acts of sex discrimination and sexual harassment.

77. Plaintiff was sexually assaulted by a male VanderCook student at an informal VanderCook party on or near campus.

78. VanderCook had an obligation under Title IX to address sexual violence that creates a hostile educational environment, even if perpetrated outside of the school's grounds.

79. VanderCook failed to investigate Plaintiff's report of sexual assault or take any meaningful corrective action against Ballenger.

80. Defendant's failures were clearly unreasonable in light of the known circumstances.

81. The sexual assault and resulting harassment and retaliation, along with VanderCook's refusal to conduct a thorough investigation or take any action in response to reports of the sexual assault and ongoing harassment, effectively barred Plaintiff's access to educational opportunities and benefits. Plaintiff had to leave VanderCook and transfer to an alternative school.

82. By its actions and inactions, VanderCook acted with deliberate indifference toward the right of Plaintiff to a safe and secure education environment, thus materially impairing Plaintiff's ability to pursue her education at VanderCook in violation of the requirements of Title IX.

83. Specifically, VanderCook violated Title IX by, *inter alia*:

a. Failing to conduct an adequate investigation into the report of Ballenger's sexual assault against Plaintiff;

b. Failing to enforce the No Contact order;

c. Failing to conduct an adequate investigation into Plaintiff's reports of violations of the No Contact order and other students' harassment;

d. Protecting and advocating for Ballenger despite concrete evidence of sexual assault against Plaintiff;

e. Creating a climate that tolerated sexual harassment, assault, violence, and other misconduct, and that tolerated the complete disregard of reports of sexual assault and on-going retaliation;

f. Failing to develop, adopt or employ policies and procedures to properly address complaints of student-against-student sexual harassment, assault, and violence;

g. Failing to develop or adopt policies and procedures regarding prompt and equitable grievance procedures and investigation of reports of student-against-student sexual harassment, assault, and violence;

h. Failing to provide policies, procedures, or training for administrators, employees, and students about sexual harassment and assault;

i. Failing to provide, offer, recommend, or coordinate adequate health, psychological, counseling, and academic assistance and services to Plaintiff after she was sexually assaulted and violated by Ballenger; or being deliberately indifferent thereto;

j. Refusing to offer to accommodate Plaintiff through Independent Study; and

k. Through other actions, inaction, and deliberate indifference.

84. VanderCook failed to conduct an adequate investigation, and failed to impose sufficient remedies, based on Plaintiff's report that she was sexually assaulted by a male VanderCook student and being retaliated against by both professors and students for reporting Ballenger's sexual assault.

85.     VanderCook's own investigation yielded a finding that Ballenger's conduct toward Plaintiff violated VanderCook's policies warranting sanctions.

86.     VanderCook was deliberately indifferent in addressing Plaintiff's report of sexual assault by, among other ways:

    a.  Failing to provide academic accommodations for the victim;

    b.  Failing to enforce the No Contact order between the reported perpetrator and victim;

    c.  Failing to prevent retaliation from professors and VanderCook students;

    d.  Failing to tell Plaintiff about her rights in reporting sexual assault;

    e.  Failing to conduct an adequate investigation and/or follow through on reported assault or dragging out an investigation; and,

    f.  Failing to address continuing harassment or retaliation.

87.     VanderCook knew or should have known that Plaintiff's distress became more severe after Plaintiff continued to encounter Ballenger on campus and at college-sponsored activities, and that the possibility of such continued encounters in the future put Plaintiff under severe distress, anxiety, and panic attacks.

88.     Ballenger's sexual assault on Plaintiff, his presence on campus, her encounters with him after the assault, and the accompanying risk that she would encounter Ballenger in the future created a hostile environment that effectively deprived her of the educational opportunities and benefits provided by the school.

89.     Despite Plaintiff's repeated requests to discuss remedial actions against Ballenger so that she could conduct herself safely while on campus and so that she could finish her education without any disruption, VanderCook refused.

90. While Plaintiff continuously suffered from anxiety and distress due to Ballenger's unrestricted presence on campus, which compromised her education, VanderCook did not take any meaningful action to remedy the situation.

91. VanderCook failed to take sufficient and meaningful corrective and remedial action and as a result of VanderCook's deliberate indifference, Plaintiff was subjected to an intimidating, hostile, offensive, and intolerable educational environment.

92. By the actions described above, VanderCook acted to deprive Plaintiff of her rights to be free from discrimination in education as provided in Title IX.

93. As a result of Vandercook's conduct, Plaintiff has suffered injury to her educational career, as well as other injuries for which she is entitled to actual, compensatory and punitive damages, as well as equitable relief, under federal law.

94. VanderCook's discriminatory conduct, as alleged here, was done with malice and/or with deliberate indifference to Plaintiff's rights.

95. As a direct and proximate result of VanderCook's action, inaction, and deliberate indifference, as alleged here, Plaintiff is entitled to entry of appropriate equitable relief including, but not limited to:

   a. Providing Plaintiff with full and permanent access to all information and documents related to the purported Title IX investigation including audio recordings and written statements;

   b. Requiring yearly mandatory sensitivity training for VanderCook staff regarding sexual assault awareness and the treatment of sexual assault victims;

   c. Requiring yearly mandatory training for VanderCook students regarding sexual assault awareness and Title IX requirements; and,

21

     d.   Requiring yearly mandatory training for VanderCook's Title IX coordinator.

96.     As a direct and proximate result of Vandercook's action, inaction, and deliberate indifference, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

     a.   Past, present, and future physical and psychological pain, suffering and impairment;

     b.   Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

     c.   Impaired educational capacity;

     d.   Attorneys' fees and costs; and

     e.   Such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiff seeks entry of judgment and an award of compensatory damages, plus interest, attorney's fees, punitive damages, costs associated with this litigation, and any other relief that this Court deems appropriate.

## COUNT II
### Retaliation in Violation of Title IX
### (*Defendant VanderCook*)

97.     For paragraph 97, Plaintiff incorporates paragraphs 1-96.

98.     By the actions and inactions described above, VanderCook engaged in unlawful retaliation when it failed to provide prompt and equitable responses to Plaintiff's reports of Ballenger's violations of the No Contact order and ongoing harassment from both students and professors.

99.   VanderCook knew or should have known that Plaintiff's distress became more severe after Ballenger violated and continued to violate the No Contact order and after Plaintiff encountered harassment from other students and professors.

100.   VanderCook's failure to adequately address Ballenger's violations of the No Contact order and other students' and professors' harassing conduct created a hostile environment that effectively deprived Plaintiff of the educational opportunities and benefits provided by the school.

101.   Despite being aware of Plaintiff suffering from anxiety and distress as a result of Ballenger's violations of the No Contact order and ongoing harassment from both students and professors, which severely compromised Plaintiff's education, VanderCook did not take any meaningful action to remedy the situation.

102.   VanderCook failed to take sufficient and meaningful corrective and remedial action and as a result of VanderCook's deliberate indifference and retaliation, Plaintiff was subjected to an intimidating, hostile, offensive, and intolerable educational environment.

103.   By the actions described above, VanderCook acted to deprive Plaintiff of her rights to be free from discrimination in education as provided in Title IX.

104.   As a result of Vandercook's conduct, Plaintiff has suffered injury to her educational career, as well as other injuries for which she is entitled to actual, compensatory and punitive damages, as well as equitable relief, under federal law.

105.   VanderCook's discriminatory and retaliatory conduct, as alleged herein, was done with malice and/or with deliberate indifference to Plaintiff's rights.

23

106.     As a direct and proximate result of Vandercook's action, inaction, deliberate indifference, and retaliation, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.   Past, present, and future physical and psychological pain, suffering and impairment;

    b.   Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.   Impaired educational capacity;

    d.   Attorneys' fees and costs; and

    e.   Such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiff seeks entry of judgment and an award of compensatory damages, plus interest, attorney's fees, punitive damages, costs associated with this litigation, and any other relief that this Court deems appropriate.

## COUNT III
### Assault
### (*Defendant Ballenger*)

107.     For paragraph 107, Plaintiff incorporates by reference ¶¶1-106.

108.     Ballenger intentionally and unlawfully threatened Plaintiff with bodily injury by force with the apparent present ability to cause such bodily injury and caused Plaintiff to reasonably fear imminent peril.

109.     Ballenger acted willfully, with actual malice, and with deliberate violence

110.     Ballenger acted with specific intent to injure Plaintiff.

111.    Ballenger specifically intended to injure Plaintiff by causing Plaintiff to reasonably fear imminent peril by threatening her with bodily injury with the apparent and present ability to cause such bodily injury.

112.    As a direct and proximate result of this assault, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

   a.  Past, present, and future physical and psychological pain, suffering and impairment;

   b.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

   c.  Impaired educational capacity;

   d.  Attorneys' fees and costs; and

   e.  Such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiff seeks entry of judgment and an award of compensatory damages, plus interest, attorney's fees, punitive damages, costs associated with this litigation, and any other relief that this Court deems appropriate.

**Count IV**
**Battery**
**(*Defendant Ballenger*)**

113.    For paragraph 113, Plaintiff incorporates by reference ¶¶1-112.

114.    As alleged herein, Ballenger intentionally made violent, harmful, and offensive contact with Plaintiff by, among other ways, sexually assaulting Plaintiff while asleep, unconscious and intoxicated.

115.    Ballenger acted willfully, with actual malice, and with deliberate violence.

116. Ballenger acted with the specific intent to injure Plaintiff.

117. Ballenger intended to injure Plaintiff by making violent, harmful and offensive contact with her.

118. As a direct and proximate result of this battery, Plaintiff sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a. Past, present, and future physical and psychological pain, suffering and impairment;

    b. Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c. Impaired educational capacity;

    d. Attorneys' fees and costs; and

    e. Such other and further relief as this Court deems just and proper.

WHEREFORE, Plaintiff seeks entry of judgment and an award of compensatory damages, plus interest, attorney's fees, punitive damages, costs associated with this litigation, and any other relief that this Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

/s/ Jeffrey R. Kulwin
One of the attorneys for Erika Pogorzelska

Jeffrey R. Kulwin
Rachel A. Katz

KULWIN, MASCIOPINTO & KULWIN, LLP
161 N. Clark, Suite 2500
Chicago, Illinois 60601
(o) 312.641.0300; (f) 312.855.0350
jkulwin@kmklawllp.com
rkatz@kmklawllp.com