**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Erika Pogorzelska, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19 CV 05683 |
| | ) | Hon. Marvin E. Aspen |
| VANDERCOOK COLLEGE OF MUSIC | ) | |
| and Eric Ballenger, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Erika Pogorzelska ("Plaintiff") alleges that she was sexually assaulted and battered by her classmate, Defendant Eric Ballenger ("Ballenger"). She relatedly alleges that her school, Defendant VanderCook College of Music ("VanderCook"), failed to conduct a reasonable investigation into her allegations and then retaliated against her in violation of Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq.* (Complaint (Compl.) (Dkt. No. 1) ¶ 1.) Plaintiff alleges four counts: (I) deliberate indifference in violation of Title IX against VanderCook; (II) retaliation in violation of Title IX against VanderCook; (III) assault against Ballenger; and (IV) battery against Ballenger. Presently before us are two motions to dismiss filed individually by the defendants. (VanderCook's Mot. to Dismiss ("VanderCook MTD") (Dkt. No. 10); Ballenger's Mot. to Dismiss ("Ballenger MTD") (Dkt. No. 15).) For the reasons set forth below, we grant VanderCook's motion in part and deny it in part, and we deny Ballenger's motion.

# BACKGROUND

The following facts are taken from Plaintiff's Complaint and are deemed true for the purposes of this motion. See *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Plaintiff is a former VanderCook student who alleges that she was sexually assaulted and battered by her classmate, Ballenger, during their sophomore years at VanderCook. (Compl. ¶¶ 8–10.) VanderCook is a higher education institution that receives federal funds within the meaning of 20 U.S.C. § 1681(a). (*Id.*) We review the facts chronologically.

Both Plaintiff and Ballenger majored in music education and first met one another during freshman orientation. (*Id.* ¶ 11.) Due to VanderCook's small size (about 100 students) and the fact that they shared majors, they were often in the same classes and college-sponsored activities. (*Id.* ¶¶ 11–12.)

On August 25, 2017, Plaintiff attended a party thrown by VanderCook students at Ballenger's apartment. (*Id.* ¶ 15.) During the party, Ballenger allegedly sexually assaulted Plaintiff while she was unconscious, at times asleep, and intoxicated. (*Id.* ¶ 16.) Four days later, on August 29, 2017, Plaintiff reported the sexual assault to the Chicago Police Department after treatment by a doctor at Rush Hospital. (*Id.* ¶ 17.) She was also referred to Rape Victim Advocates ("RVA"), a non–profit organization that provides resources and support for survivors of sexual violence. (*Id.*)

On August 30, 2017, Plaintiff reported the sexual assault to VanderCook through its Title IX representative, Dr. Tsai. On the same day, Dr. Tsai notified VanderCook's Dean of Undergraduate Studies, Dean Dolan, to notify of Plaintiff's report. (*Id.* ¶ 19.) Dr. Tsai and Dean Dolan then met, and Dr. Tsai told Dean Dolan that Plaintiff had reported that Ballenger sexually

assaulted her at an off-campus party. (*Id.*) Dean Dolan then emailed and met with Plaintiff. (*Id.* ¶ 20.) At the meeting, Plaintiff told Dean Dolan the details of the assault and named individuals who might have witnessed the events relating to the sexual assault. (*Id.*) Dean Dolan discussed immediate accommodations with Plaintiff, including imposing a No Contact Order and possibly changing Plaintiff's class schedule to prevent Plaintiff from interacting with Ballenger. (*Id.* ¶ 21.) Additionally, Dean Dolan explained that an investigation with VanderCook's Standards Committee would take place. (*Id.* ¶ 22.) On the same day, Dean Dolan and Professor Eccles met with Ballenger. (*Id.* ¶ 24.) Ballenger also provided a list of witnesses. (*Id.*) During the meeting, they instructed Ballenger to have no contact with Plaintiff going forward. (*Id.*)

VanderCook investigated Plaintiff's sexual assault report between August 30, 2017 and September 5, 2017. (*Id.* ¶ 25.) As part of that investigation, Dean Dolan and Professor Eccles met with seven students. (*Id.* ¶ 26.) They asked those students to explain their perspectives of any events that occurred at the party. (*Id.*) During this time period, Plaintiff saw and interacted with Ballenger in classes and required college-sponsored activities. (*Id.* ¶ 25.)

On September 5, 2017, Dean Dolan[1] and Professor Eccles met to review the evidence and discuss any new evidence that may have been presented. (*Id.* ¶ 27.)

Before the results of the investigation were released, Plaintiff went to Dean Dolan's office after meeting with a school counselor on September 6, 2017. (*Id.* ¶¶ 28–29.) She reported to Dean Dolan that she was harmed by the fact that the No Contact Order was not enforced as Ballenger was in both her classes and required college-sponsored activities. (*Id.*) Specifically,

---

[1] The Complaint alleges that a "Dean Nolan" met with Professor Eccles on September 5, 2017 rather than a Dean Dolan. (Compl. ¶ 27.) We assume for the purposes of this motion that Plaintiff intended to plead "Dean Dolan." If our assumption is incorrect, Plaintiff should notify us immediately.

she told Dean Dolan that she "just couldn't do this" anymore and that she has "tried, but everything on this campus reminds [her] of [Ballenger]" and that she "can't make music with that monster." (*Id.* ¶ 28.) Dean Dolan responded by stating that it was difficult to do anything to protect Plaintiff from having to interact or be in the same classes as Ballenger because it was a small school. (*Id.* ¶ 29.) Dean Dolan gave Plaintiff three options: (1) continue at VanderCook with some accommodations to Ballenger's schedule; (2) withdraw from all but her theory and sightseeing courses; or (3) withdraw completely. (*Id.*)

Five days later, on September 11, 2017, Plaintiff returned to Dean Dolan's office to ask follow-up questions. (*Id.* ¶ 30.) These follow-up questions pertained to her financial aid and grants, as well as request an independent study for her music history class so that she would not have to attend class with Ballenger. (*Id.*) Dean Dolan rejected Plaintiff's request. (*Id.* ¶ 31.) Dean Dolan further explained that if Plaintiff were to drop out of school, she would not receive any credit for the semester and would still be responsible for the semester's tuition. (*Id.*)

On September 12, 2017, Dean Dolan and Professor Eccles met to finalize their investigation. (*Id.* ¶ 32.) By that time, they had not given Plaintiff the chance to learn of what evidence Ballenger had presented or to rebut any such evidence or information. (*Id.* ¶ 34.) Nor did they do so with the information that they learned from their interviews of student witnesses. (*Id.* ¶ 35.) Nor was there a hearing regarding Plaintiff's allegations against Ballenger. (*Id.* ¶¶ 27, 36.) At this meeting, both Dean Dolan and Professor Eccles determined for reasons unknown[2] to Plaintiff that "there was not a preponderance of the evidence against [Ballenger]"

---

[2] On September 12, 2017, Dean Dolan sent Plaintiff an email that stated VanderCook was "not at liberty to discuss the sanctions placed on [Ballenger]." (*Id.* ¶ 38.) But the Complaint does suggest that Dean Dolan told Plaintiff that the sexual assault was "a misunderstanding." (*Id.* ¶ 42.)

4

yet they sanctioned Ballenger anyways. (*Id.* ¶ 37.) Ballenger's sanctions included: (a) sexual misconduct training; (b) stepping back from leadership positions for the fall semester; (c) participation in a mediated meeting between Plaintiff and Ballenger to begin the healing process; and (d) a report of the incident would remain in Ballenger's official file until graduation. (*Id.* 37.)

Following this outcome, Plaintiff contacted Life Span to assist her. (*Id.* ¶ 39.) Life Span is an advocacy organization for survivors of sexual assault and domestic violence. (*Id.*) Life Span contacted VanderCook on Plaintiff's behalf. (*Id.* ¶ 39.) Two days later, on September 14, 2017, Life Span met with Dean Dolan and Plaintiff to go over the investigation and look into Plaintiff's options. (*Id.* ¶ 40.) VanderCook's procedure did not provide for any appeal process. (*Id.*) Dean Dolan provided Life Span with VanderCook's findings. (*Id.*) Those findings included the list of sanctions highlighted above and a finding that he was "guilty but not guilty." (*Id.*)

The next day, Plaintiff emailed Dean Dolan that she intended to remain enrolled in school. (*Id.* ¶ 41.)

Plaintiff alleges that she reported Ballenger's numerous violations of the No Contact Order to VanderCook. (*Id.* ¶ 44.) Yet VanderCook did not enforce the No Contact Order. (*Id.*) Examples of Ballenger's alleged violations of the No Contact Order include: signing up for a pep band extracurricular activity after Plaintiff had already signed up, having his friends video-conference him to watch a friend's live recital performance despite being instructed not to attend the recital because Plaintiff would be present, and sitting directly in front of Plaintiff in class on multiple occasions. (*Id.* ¶ 43.)

On or about October 2, 2017, Plaintiff met with Dean Dolan about a report that Ballenger was not adhering to the No Contact Order. (*Id.* ¶ 45.) During that meeting, Dean Dolan allegedly

5

became hostile towards Plaintiff and said something like "Why are you blaming and attacking the school, it is not the school's fault that there were drugs and alcohol at the party" and that "there is nothing else the school can do for you." (*Id.*) Dean Dolan also asked Plaintiff why she was so angry and recommended that "instead of being angry you should use that energy to focus and better yourself." (*Id.*)

Plaintiff alleges that she was continually harassed and retaliated against by fellow students who were the perpetrator's friends. (*Id.* ¶ 46.) She reported several of these incidents to Dean Dolan in writing. (*Id.*) Plaintiff alleges that VanderCook did not adequately investigate those reports and failed to protect Plaintiff from further ongoing harassment and retaliation. (*Id.*) For example, on October 12, 2017, it was brought to Dean Dolan's attention via email that friends of Ballenger were harassing Plaintiff through inappropriate and aggressive comments. (*Id.* at ¶ 47.) Dean Dolan said that she would talk to those students. (*Id.*) Yet she neither followed up with Plaintiff nor took corrective action in that regard. (*Id.*)

Plaintiff also alleges that her professors retaliated against her. (*Id.* ¶ 48.) In support of this claim, she pleads that she was reprimanded for being absent despite having been instructed to provide Plaintiff with certain accommodations in light of her situation. (*Id.*)

On November 2, 2017, Plaintiff and Life Span reviewed VanderCook's final report in person. (*Id.* ¶ 50.) The final report stated that at the time of the sexual assault, Plaintiff was intoxicated and Ballenger was not. (*Id.* ¶ 51.) The report indicated that there was insufficient evidence to support Plaintiff's allegations or a lack of consent to sexual intercourse. (*Id.* ¶ 51.) VanderCook's Harassment Policy defines 'consent.' (*Id.* ¶ 52.) Under the Harassment Policy, a person is unable to provide consent or give knowing consent if the person is: incapacitated due to alcohol or drugs or asleep." (*Id.*)

At some point, Life Span had conversations with Dean Dolan and VanderCook President Dr. Rosenthal concerning the investigation, findings, and Ballenger's violations of the No Contact Order. (*Id.* ¶ 53.) During one conversation, Dr. Rosenthal stated that Plaintiff was "paranoid," that she felt bad for Ballenger because he "comes into [her] office crying," and that "it's a small school[,] [i]t's not like I can kick him out." (*Id.* ¶ 54.)

Plaintiff suffered mental anguish while still at the school and attended therapy to help her cope with stress, anxiety, depression, difficulty sleeping, flashbacks of the sexual assault, difficulty focusing, post-traumatic stress disorder, and panic attacks since the sexual assault. (*Id.* ¶ 55.) Plaintiff alleges that these experiences, coupled with the fact that Plaintiff kept running into Ballenger on campus and in class, caused Plaintiff to feel unsafe on campus and further caused panic attacks and severe distress. (*Id.* ¶¶ 56–57.)

On December 11, 2017, Plaintiff ultimately withdrew from VanderCook and transferred to a different college. (*Id.* ¶ 58.) Plaintiff states that she withdrew because she was frustrated by VanderCook's inaction and its refusal to take disciplinary action against Ballenger. (*Id.*) Plaintiff alleges that VanderCook's deliberate indifference to her sexual assault report and Ballenger's continued presence on campus created a hostile environment that effectively deprived her of educational opportunities and benefits. (*Id.* ¶¶ 81–83, 88.)

Plaintiff alleges on information and belief that VanderCook failed to provide the appropriate training or education to administrators, staff, and students in compliance with Title IX. (*Id.* ¶¶ 71–72.) She also alleges that VanderCook's sexual harassment and sexual assault policies were inequitable and inadequate with respect to investigating and properly responding to reports of student-against-student sexual harassment. (*Id.* ¶ 73.)

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo*, 526 F.3d at 1081. A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

Where a district court has original jurisdiction over one claim, it may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution." 28 U.S.C. § 1367(a); *see also Hinojosa v. Linebarger Goggan*

*Blair & Sampson, LLP*, No. 1:19-cv-02521, 2019 WL 6833848, at *3 (N.D. Ill. Dec. 11, 2019). Supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). It allows a federal court to hear both state claims "where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423 (7th Cir. 1995) (citing *Gibbs*, 383 U.S. at 725). A "loose factual connection between the claims is generally sufficient." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (internal citations omitted). However, it is not enough that the claims be tangentially related. *Hernandez v. Dart*, 635 F. Supp. 2d 798, 814 (N.D. Ill. 2009) (internal citation omitted). The "facts linking state to federal claims must be 'operative,' meaning they must be 'relevant to the resolution of' the federal claims." *U.S. v. Clark*, 2010 WL 476637, at *1 (N.D. Ill. 2010) (internal citation omitted); *see also General Auto Serv. Station v. The City of Chicago*, 2004 WL 442636, at *12 (N.D. Ill. 2004) (state law claim that provided "factual background" for federal constitutional claim was not sufficiently related to give rise to supplemental jurisdiction).

## ANALYSIS

### I. VanderCook's Motion to Dismiss: Failure to State a Claim Under Title IX

Defendant VanderCook moves to dismiss the Title IX claims against it pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 10.) Title IX states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance," subject to certain exceptions.[3] 20 U.S.C. § 1681. Although Title IX makes no explicit reference to sexual harassment or abuse, the Supreme Court has held that such conduct can sometimes constitute discrimination "on the basis of sex" in violation of the statue. 20 U.S.C. § 1681; *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644–45, 119 S. Ct. 1661, 1671–72 (1999) (recognizing a private right of action for a fifth grader against school for deliberate indifference to reports of sexual harassment); *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 182, 125 S. Ct. 1497, 1509 (2005) (holding that retaliation against someone who complains of sex discrimination is a form of intentional sex discrimination under Title IX). Thus, Title IX provides an avenue of legal relief for survivors of sexual abuse and harassment committed by professors, teachers, coaches, classmates, and others at educational institutions that receive federal funding. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 709–717, 99 S. Ct. 1964-68 (1979) (recognizing a private right of action to enforce Title IX violations); *see also Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 76, 112 S. Ct. 1028, 1038 (1992) ("a damages remedy is available for an action brought to enforce Title IX."). We address the Title IX deliberate indifference claim (Count I) and retaliation claim (Count II) in turn.

### A. Deliberate Indifference

To establish a Title IX discrimination claim arising from student-on-student sexual assault or harassment, a plaintiff must allege: (1) that the school exercised substantial control over both the harasser and the context in which the known harassment occurs; (2) the plaintiff must have suffered harassment that is so severe, pervasive, and objectively offensive that it can

---

[3] The statutory exceptions include educational institutions controlled by a religious organization, social fraternities and sororities, military services or the merchant marine, institutions that traditionally and continually admit only students of one sex, boy or girl conferences, father-son and mother-daughter activities, and beauty pageants. 20 U.S.C. § 1681(a)(1)–(9).

be said to deprive them of access to the educational opportunities or benefits provided by the school; (3) the school must have had actual knowledge of the harassment; (4) the school must have acted with deliberate indifference to the harassment; and (5) the school's deliberate indifference must have caused the plaintiff to undergo harassment or make that student vulnerable to it. *See, e.g.*, *Davis*, 526 U.S. at 644–45, 119 S. Ct. at 1671–72. VanderCook's motion to dismiss focuses exclusively on the deliberate indifference element. We focus our analysis accordingly.

Deliberate indifference is a "high standard" and must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. *See id.* at 643–45; *see also Hill v. Cundiff*, 797 F.3d 948, 973 (11th Cir. 2015) ("A clearly unreasonable response causes students to undergo harassment or makes them more vulnerable to it."). Yet the "deliberate indifference" standard does not require funding recipients to remedy the harassment. *See Davis*, 526 U.S. at 648–49, 119 S. Ct. at 1674 ("The dissent consistently mischaracterizes this standard to require funding recipients to "remedy" peer harassment . . . and to 'ensur[e] that . . . students conform their conduct to' certain rules. Title IX imposes no such requirements") (first ellipsis added). Rather, under *Davis*, a school's response to harassment will amount to deliberate indifference only if it is "clearly unreasonable in light of the known circumstances." *Id.* *Davis* explained that this is "not a mere 'reasonableness' standard" and that there is "no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not "clearly unreasonable" as a matter of law. *Id.* at 649.

The Complaint alleges that that VanderCook's investigation was inadequate. Plaintiff seeks to analogize her situation with several cases. For example, Plaintiff cites to *Landon v. Oswego Unit Sch. Dist. # 308*, No. 00-cv-1803, 2001 WL 649560, at *5 (N.D. Ill. June 8, 2001).

11

There, the minor–plaintiff sued his school district under Title IX after the district's employee (a bus driver named Johnson) had, among other things, showed the plaintiff a naked photo of a woman, informed plaintiff that that woman liked to have sex with young boys, told the plaintiff that he would pick the plaintiff up at his home to have sex with the pictured naked woman at the bus driver's own home, talked about cheating on his wife and oral sex, discussed with the plaintiff what sexual positions he liked, made masturbation hand gestures, and tried to touch the minor–plaintiff's genitals. *Id.* at *2–3. *Landon* concluded that there were material questions of fact as to whether the district's response to their student's sexual misconduct reports was clearly reasonable in light of the known circumstances. *Id.* at *5. *Landon* reasoned that summary judgment in favor of the district was not appropriate because, for example, the district did not interview the plaintiff to aid its responsive investigation (because they assumed that the plaintiff was lying) and did not make any corrective measure beyond monitoring the bus driver's incomplete audio and video recordings. *Id.*

The allegations concerning VanderCook's response are very different than those concerning the school district in *Landon*. *See id.* Indeed, the allegations here rather suggest that VanderCook promptly took steps to investigate the allegations. For example, on the same day that Plaintiff reported the sexual assault to Dr. Tsai, VanderCook's Title IX representative, Dr. Tsai then met with Dean Dolan, and Dean Dolan then met with Plaintiff. (Compl. ¶ 19–20.) On the same day, Dean Dolan and Professor Eccles met with Ballenger and issued a No Contact Order. (*Id.* ¶ 24.) From that day (August 30, 2017) until September 5, 2017, VanderCook investigated the matter by interviewing seven students who Plaintiff and Ballenger identified as witnesses. (*Id.* ¶¶ 18–27.) Plaintiff does not allege that VanderCook failed to interview any witness. Rather, she takes issue with the fact that only Dean Dolan interviewed her (and not

12

Professor Eccles[4]) and that she was not given an opportunity to learn of what evidence Ballenger presented or given an opportunity to rebut it such as a hearing[5]. (*Id.* ¶¶ 32–36.) After Dean Dolan and Professor Eccles concluded their investigation, they determined (about two weeks after Plaintiff made her report) that there was not a preponderance of evidence against Ballenger. (*Id.* ¶ 37.) We would have held that they pleaded a compliant Title IX investigation had Plaintiff pleaded only these allegations.

But Plaintiff's allegations continue, alleging that although VanderCook determined there was not a preponderance of evidence against Ballenger, they nevertheless found him "guilty but not guilty." (*Id.* ¶¶ 37, 40.)[6] And despite finding Ballenger "guilty but not guilty" of sexual assault and issuing a remedial No Contact Order, Plaintiff repeatedly reported that Ballenger was violating the school's No Contact Order, and VanderCook repeatedly failed to enforce that No Contact Order. (*See, e.g.*, *id.* ¶¶ 41– 44.) Plaintiff also pleaded that VanderCook declined to make certain responsive accommodations like independent studies so that Plaintiff could avoid being in the same classroom as her classmate, who was found "guilty but not guilty" of sexual

---

[4] We are unaware of any standard, and Plaintiff cites none, requiring a school interview an alleged survivor of sexual assault or harassment multiple times. Here, the allegations show that Dean Dolan interviewed Plaintiff and conferred with Professor Eccles about the contents of that interview. (*See id.* ¶ 37.)

[5] Title IX does not necessarily require a formal hearing. *See* State Dep't of Ed., Office of Civil Rights, Questions and Answers on Title IX and Sexual Violence (April 2014; Withdrawn September 2017) at 25 ("The investigation may include a hearing to determine whether the conduct occurred, but Title IX does not necessarily require a hearing."); 72 Fed. Reg. 3432 (Jan. 25, 2007) (finding that the preceding Q & A is a "significant guidance document")

[6] We do not know what "guilty but not guilty" means. Nor is it defined in Black's Law Dictionary. For the purposes of this motion only, we draw an inference in Plaintiff's favor that that means VanderCook found Ballenger culpable to some degree. Plaintiff ought to have the right to explore that phrase's meaning in discovery to the extent that it relates to her case's theory.

13

assault, but declined to do so. (*See, e.g.*, *id.* ¶¶ 54, 86.) Thus, the pleaded fact that VanderCook determined that Ballenger was "guilty but not guilty" of sexual assault yet declined to enforce its own No Contact Order is enough to state a Title IX claim as those actions (or inactions) could plausibly be clearly unreasonable under the known circumstances such that they qualify as severe, pervasive, and objectively offensive conduct that supports Plaintiff's deliberate indifference allegations.[7]

We therefore deny VanderCook's motion, in part, and we allow Plaintiff's Title IX deliberate indifference claim to proceed.

### B. Retaliation

VanderCook also moves to dismiss Plaintiff's claim for retaliation against VanderCook. Title IX prohibits educational institutions from retaliating against people who speak out against

---

[7] This conclusion aligns with other holdings that a school's failure to separate an alleged victim and attacker could support a claim of deliberate indifference. *See, e.g.*, *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 671 (2d Cir. 2012) (holding that the jury's finding of deliberate indifference was supported by the record based in part on the fact that the school's "remedial actions were little more than half-hearted measures"); *Wills v. Brown Univ.*, 184 F.3d 20, 37 (1st Cir. 1999) ("the continuing presence of the harasser may so alter the terms and conditions of education that the victim of harassment may be able to establish a claim for sex discrimination"); *Soper v. Hoben*, 195 F.3d 845, 855 (6th Cir. 1999) (holding that the assertion that a victim was raped, sexually abused, and harassed "obviously qualifies" as severe, pervasive, and objectively offensive sexual harassment); *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 32–33 (D.D.C. 2018) (concluding that the plaintiff plausibly alleged deliberate indifference by having pleaded that the University failed to maintain and enforce a No Contact Order against the classmate who allegedly sexually assaulted the plaintiff); *Goodwin v. Pennridge Sch. Dist.*, 309 F. Supp. 3d 367, 375 (E.D. Pa. 2018) ("Drawing all reasonable inferences in Goodwin's favor, [the defendants] exacerbated the hostile environment when they continued to allow Goodwin's harassers to be near her."); *Butters v. James Madison Univ.*, 208 F. Supp. 3d 745, 760 (W.D. Va. 2016) ("a university's failure to separate an alleged victim and attacker during a grievance process could support a claim of deliberate indifference."); *Kelly v. Yale Univ.*, No. 3:01-cv-1591, 2003 WL 1563424, at *4 (D. Conn. Mar. 26, 2003) (holding that a reasonable jury could find that a school's failure to respond to a request for either academic or residential accommodations by a student alleging sexual assault by a classmate could constitute deliberate indifference).

sexual harassment. *See, e.g.*, *Jackson*, 544 U.S. at 183, 125 S. Ct. at 1509. To establish a claim for retaliation under Title IX, plaintiffs must allege that (1) they engaged in a statutorily protected activity; (2) the school took a materially adverse action against them; and (3) there existed a but-for causal connection between the two. *See Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) (citing *Milligan v. Bd. of Trs.*, 686 F.3d 378, 388 (7th Cir. 2012) and *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 337, 360, 133 S. Ct. 2517, 2533 (2013)). A Title IX retaliation claim fails if the plaintiff has not alleged some "retaliatory motive" underlying the adverse action. *See Doe v. Columbia College*, 299 F. Supp. 3d 939, 960 (N.D. Ill. 2017) (St. Eve, J.), *aff'd*, 933 F.3d 849 (7th Cir. 2019) (recognizing that intentional inaction may be the basis of a retaliation claim but granting motion to dismiss for failure to plead a "retaliatory motive.").

The facts pleaded here are like those in *Columbia College*, 299 F. Supp. 3d at 960, *aff'd*, 933 F.3d at 849. There, Judge St. Eve held that the plaintiff's Title IX retaliation claim failed because that plaintiff did not allege a causal connection between the protected activity (reporting sexual harassment) and the allegedly adverse action (disciplinary inaction). The pleaded facts in *Columbia College* were ultimately that the school failed to take disciplinary action generally with respect to any harassment, not just the harassment that the plaintiff complained about. *Id.* Here, Plaintiff's retaliation theory does not allege that the basis for her retaliation theory was caused by a retaliatory motive. True, Plaintiff pleaded that Dean Dolan was hostile to her when Plaintiff sought help (Compl. ¶ 45), that professors reprimanded her for absences despite having been instructed to provide Plaintiff with certain accommodations for her situation (*id.* ¶ 48), that VanderCook failed to enforce the No Contact Order (*see, e.g.*, *id.* ¶¶ 28–29), and failed to stop Ballenger's friends from taunting her. (*Id.* ¶ 46.) But Plaintiff simply did not plead that

15

VanderCook's conduct (including its inactions) was intentional or based on a retaliatory motive. (*See id.* ¶¶ 98–106.) Thus, we grant VanderCook's motion, in part, and we dismiss the retaliation claim without prejudice.

II.     Ballenger's Motion to Dismiss: Supplemental Jurisdiction

Ballenger asks us to dismiss the claims against him pursuant to Fed. R. Civ. P. 12(b)(1). Federal courts may exercise supplemental jurisdiction over a state claim (like assault and battery tort claims) if the state and federal claims "derive from a common nucleus of operative fact." *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 606–07 (7th Cir. 2008). Hansen dealt with Title IX claims against a school district coupled with sexual battery and state negligence claims against a sexually abusive teacher and the school district. *Id.* There, the Seventh Circuit found supplemental jurisdiction over state law claims even after granting summary judgment on the Title IX claim for the school district. *Id.* at 608. More, the Seventh Circuit has also held that the connection between a failure to investigate claim and sexual assault claim are enough to justify supplemental jurisdiction. *Ammerman*, 54 F.3d at 425. *Ammerman* placed significant weight on the fact that "factual allegations regarding the extent of the harassment by [Defendant] were highly relevant to the determination of whether appropriate remedial action had been taken by the college." *Id.*

Ballenger cites no law supporting his position that an alleged sexual assault and battery does not share a nucleus of operative fact with its related Title IX investigation. Furthermore, case law refutes this position. *See Hansen*, 551 F.3d at 608; *see also Ammerman*, 54 F.3d at 425. Here, the overlap between the investigation into the claim and the facts of the sexual battery allegation is both clear and strong. We follow *Ammerman*'s reasoning and hold that the factual

allegations underlying the extent of Ballenger's conduct are highly relevant to assess whether VanderCook's response was appropriate. *See Ammerman*, 54 F.3d at 425.

Defendant's attempts to distinguish his position from *Ammerman*'s by the fact that the alleged assault and battery occurred off campus rests on a distinction without a difference. The key question in this inquiry is not where the alleged incident occurred since university students at the same school may interact off campus. *See Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 821 (7th Cir. 2003) (discussing social media posts and other off-campus complaints of harassment as proper component of Title IX investigation). Not surprisingly, nothing in *Ammerman* turns on Defendant's distinction either; in fact, the distinction between on and off-campus harassment does not appear in the decision.

Thus, we hold that accepting supplemental jurisdiction over Plaintiff's state tort claims of assault and battery claims against Ballenger would be appropriate. *See* 28 U.S.C. § 1367(a). We accept supplemental jurisdiction over those claims. Ballenger's motion to dismiss is denied.

## CONCLUSION

For the above reasons, we grant VanderCook's motion in part and deny it in part, and we deny Ballenger's motion. (*See* Dkt. Nos. 10, 15.)

                                                                      Honorable Marvin E. Aspen
                                                                       United States District Judge

Dated: March 2, 2020
       Chicago, Illinois

17