# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERIKA POGORZELSKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 5683 |
| v. ) | |
| ) | Magistrate Judge Finnegan |
| VANDERCOOK COLLEGE OF MUSIC ) | |
| and ERIC BALLENGER, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff Erika Pogorzelska has filed suit alleging that her college classmate, Defendant Eric Ballenger, sexually assaulted and battered her on August 25, 2017. Plaintiff also charges Defendant VanderCook College of Music ("VanderCook") with being deliberately indifferent to her report of the sexual assault and retaliating against her in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq*. Currently before the Court is VanderCook's motion to compel production of certain materials Plaintiff withheld as privileged: (1) three pages from Plaintiff's journals and diaries from August 25, 2017 to the present; and (2) three text messages Plaintiff's mother sent to her on August 14, 2019. At VanderCook's request, and without objection from Plaintiff, this Court conducted an *in camera* review of the disputed documents. For the reasons stated here, the motion [72, 73] is granted in part and denied in part.

## DISCUSSION

### I. Journal Pages

Plaintiff does not dispute that VanderCook is entitled to certain journal entries she prepared at the suggestion of her therapist given her allegations of specific emotional

injuries and symptoms as a result of Defendants' actions, including stress, anxiety, depression, difficulty sleeping, flashbacks of the alleged sexual assault, difficulty focusing, post-traumatic stress disorder, and panic attacks. (Doc. 52, Am Cmpl., ¶¶ 55-57). For this reason, Plaintiff has produced four pages of her seven-page journal that address her "physical, emotional or mental condition, any alleged injuries suffered consequent to the alleged inappropriate contact, and any damages in the Complaint." (Doc. 77, at 2; Doc. 73-1, at 6, Pl's Response to VanderCook's First Set of Requests to Produce No. 18).

Plaintiff withheld the three additional journal pages because she says they do not concern the specific events in question in this lawsuit, and her privacy rights outweigh any interest VanderCook has in the documents. (Doc. 77, at 2).[1] VanderCook objects that Plaintiff has taken an "overly narrow view of relevance," noting that the withheld journal entries "could show not only the distress that may have resulted from the events in this case, but other sources of distress that could have contributed to Plaintiff's alleged emotional and mental symptoms and conditions." (Doc. 72, at 2, 8). VanderCook seeks "confirmation" that the journal entries are truly not relevant. (*Id*. at 9).

After reviewing the journal pages *in camera*, the Court is satisfied that one of them (In Camera Review_001) is not responsive to VanderCook's discovery requests or relevant to Plaintiff's claims. The motion to compel production of this document is denied. The remaining two documents (In Camera Review _002 and _003), however, contain

---

[1] Plaintiff relies on *Aebischer v. Stryker Corp.*, No. 05-2121, 2006 WL 2038545 (C.D. Ill. July 19, 2006), to support her claimed right of privacy. But there the court simply concluded that it needed to conduct an *in camera* review to assess the relevancy of the plaintiff's diary entries. *Id*. at *2. *Aebischer*, in turn, cites to *Quiroz v. Hartgrove Hosp.*, No. 97 C 6515, 1998 WL 341812 (N.D Ill. June 12, 1998), where the court held, after completing an *in camera* review, that the plaintiff could withhold private diary entries that were "not found to be particularly pertinent to this case" and "not . . . likely to produce evidence usable at trial." *Id*. at *3.

2

statements about Plaintiff's mental state that may be relevant to assessing the source of her emotional damages. The motion is granted as to these documents, which must be produced.

## II. Text Messages

VanderCook also seeks to compel production of three text messages that Plaintiff's mother sent to her on August 14, 2019. Plaintiff argues that the messages are all protected from disclosure by the attorney-client privilege and the work product doctrine.

### A. Attorney-Client Privilege

The attorney-client privilege protects communications made "(1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). The purpose of the privilege is to "'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011) (quoting *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)). The party claiming the attorney-client privilege bears the burden of proving it applies. *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 180 (N.D. Ill. 2018).

Plaintiff claims the texts from her mother are protected by the attorney-client privilege because they reflect communications the mother had with Plaintiff's attorney about the litigation just nine days before he filed the Complaint. (Doc. 77, at 3). Plaintiff concedes that her attorney did not send or receive the text messages but stresses that "[u]nder certain circumstances, the attorney-client privilege can extend to

communications between non-attorneys who are properly privy to the privileged information." (*Id*.). By way of example, Plaintiff notes that the common interest doctrine extends the attorney-client privilege to otherwise non-confidential communications "where the parties undertake a joint effort with respect to a common legal interest." *BDO Seidman, LLP*, 492 F.3d at 815-16. In addition, Plaintiff observes that the presence of a third party, will not defeat a claim of privilege "when that third party is present to assist the attorney in rendering legal services." *Jenkins v. Bartlett*, 487 F.3d 482, 491 (7th Cir. 2007).

Plaintiff first suggests that even though her mother is not a party to this lawsuit, she nonetheless shares a "common interest" in the case such that her communications with Plaintiff's attorney did not waive the attorney-client privilege. (Doc. 77, at 4). But aside from stating generally that her mother "is also represented by Plaintiff's lawyers," (*id*. at 3), Plaintiff provides no evidence that her mother has any legal interest in the case whatsoever, either as a potential party or otherwise. *See, e.g., Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327 (N.D. Ill. 2008) (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004)) (the common interest doctrine "generally applies to 'any parties who have a common interest in current or potential litigation, either as actual or potential plaintiffs or defendants.'"); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732 (N.D. Ill. 2014) (parties claiming protection under the common interest doctrine "must share a common *legal* interest.") (emphasis in original). The mere fact that Plaintiff and her mother are family, or that Plaintiff's mother hopes her daughter prevails and is interested in the course of the litigation, is insufficient. *Swyear v. Fare Foods Corp.*, No. 3:16-CV-01214, 2017 WL 3503401 (S.D. Ill. July 12, 2017) (the plaintiff

4

and her mother did not share a common legal interest in a Title VII wrongful termination and sexual harassment case where there was no evidence that the mother had sought legal services for such claims). *See also Struve v. Gardner*, No. 1:19-CV-04581-RLY-MJD, 2020 WL 9602038, at *4 (S.D. Ind. Dec. 10, 2020) (though the plaintiff's wife "shares an interest in the issues at the heart of this litigation, because the resolution of those issues will affect her household's financial situation," that is not sufficient to establish a common interest in the litigation).

The cases Plaintiff relies on do not support a different conclusion. In *BDO Seidman, LLP*, the Seventh Circuit made clear that the common interest doctrine "is limited strictly to those communications made to further an ongoing enterprise." 492 F.3d at 816 (citing *U.S. v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997)) (the common interest rule "is generally invoked in cases involving criminal or civil co-defendants, . . . and related corporate entities pursuing a joint claim.") (internal citations omitted). Plaintiff fails to identify any such enterprise here. She likewise offers no explanation as to how cases involving communications among corporate employees and their counsel have any bearing on whether the attorney-client privilege applies to communications between Plaintiff and her mother concerning the mother's discussions with Plaintiff's attorney about this lawsuit. *Compare U.S. v. Dish Network, L.L.C.*, 283 F.R.D. 420, 425 (C.D. Ill. 2012) (in the corporate context, the attorney-client privilege extends to "any employee who communicates with counsel at the direction of corporate superiors regarding matters within the scope of the employee's duties for the purpose of securing legal advice."); *Zitzka v. Village of Westmont*, No. 07 C 949, 2009 WL 1346256, at *3 (N.D. Ill. May 13, 2009) (emails privileged where they reflected requests from counsel to obtain information

5

from Village employees); *U.S. ex rel. Schutte v. Supervalu, Inc.*, No. 11 C 3290, 2018 WL 2416588, at *1-2 (C.D. Ill. May 29, 2018) (considering the common interest doctrine in evaluating, for example, an email between corporate employees).

Also unavailing is Plaintiff's assertion that the attorney-client privilege applies to her mother's texts because she was conveying legal advice from the attorney as some sort of agent. (Doc. 77, at 4). The Seventh Circuit has recognized "an exception to the general rule that the presence of a third party will defeat a claim of privilege when that third party is present to assist the attorney in rendering legal services." *Jenkins*, 487 F.3d at 491. The exception "applies both to agents of the attorney, such as paralegals, investigators, secretaries and members of the office staff responsible for transmitting messages between the attorney and client, and to outside experts engaged to assist the attorney in providing legal services to the client, such as accountants, interpreters or polygraph examiners." *Id*. (internal quotations omitted). In addition, "this exception reaches retained experts, other than those hired to testify, when the expert assists the attorney by transmitting or interpreting client communications to the attorney or formulating opinions for the lawyer based on the client's communications." *Id*.

Plaintiff does not indicate who her mother purportedly represents as an agent – the attorney or her adult daughter, and she provides no evidence or argument to support either assertion. Nothing in the record suggests that Plaintiff's mother has any official role with Plaintiff's attorney or was retained by counsel to help him to render legal services. Nor is there any indication that Plaintiff's mother falls into any of the other categories of "agents" recognized by the Seventh Circuit. Indeed, Plaintiff provides no

explanation at all for why her attorney was speaking with her mother rather than communicating his advice to Plaintiff directly.

On the record presented, Plaintiff has not met her burden of demonstrating that the text messages from her mother are protected by the attorney-client privilege.

B.   **Work Product Doctrine**

Plaintiff argues that she still properly withheld the text messages pursuant to the work product doctrine. Rule 26(b)(3)(A), which codifies the work product doctrine, provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). *See also Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 163 (N.D. Ill. 2017) (quoting *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010)) (the work product doctrine protects "documents prepared 'in anticipation of litigation for the purpose of analyzing and preparing a client's case.'"). The work product doctrine "'is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts.'" *Baxter Int'l, Inc.*, 320 F.R.D. at 162-63 (quoting *Sandra T.E.*, 600 F.3d at 622). As with the attorney-client privilege, "[t]he party asserting the work product doctrine bears the burden of establishing that the doctrine applies to each document as to which it is asserted." *Id*. at 163 (citing *Miyano Mach., USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 460 (N.D. Ill. 2008)).

7

Plaintiff once again argues that the texts are protected from disclosure based on the common interest doctrine. (Doc. 77, at 5) (citing *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D. Ill. 2000)). For reasons stated previously, this argument has no merit. Perhaps anticipating this outcome, Plaintiff argues in the alternative that policy considerations behind the work product doctrine support maintaining the protected status of the texts despite the involvement of a third party. (*Id.*). "Because the work-product doctrine serves to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not automatically waive work-product protection." *Miller UK Ltd.*, 17 F. Supp. 3d at 736. Rather, "[a] waiver occurs 'when the protected communications are disclosed in a manner that substantially increase[s] the opportunities for potential adversaries to obtain the information.'" *Id.* (quoting *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1025 (7th Cir. 2012)).

Here, most of the redacted texts from Plaintiff's mother constitute attorney work product since they reflect the attorney's mental thoughts and opinions regarding the litigation. Moreover, there is no basis for finding a waiver since the disclosure of these opinions by the attorney to the mother (who in turn shared them in private texts with the Plaintiff) did not substantially increase the opportunities for adversaries to obtain the information. Therefore, these portions of the texts were properly withheld and may remain redacted. Two sentences in the texts, however, do not reveal the attorney's opinions but rather the mother's personal view about her daughter's feelings. Plaintiff has failed to demonstrate that these sentences constitute work product that may be withheld. Thus, Plaintiff must produce the third and fourth sentences of the second redacted text on In Camera Review _004, and the repetition of those sentences on In Camera Review _005.

## **CONCLUSION**

For the reasons stated above, VanderCook's Motion to Compel Journal Entries and Text Message [72, 73] is granted in part and denied in part. Plaintiff is to produce the portions of the journal and text messages that are not privileged as set forth in this opinion by July 9, 2021.

ENTER:

Dated: June 29, 2021

Sheila Finnegan
United States Magistrate Judge